*margin: ALBANY, October, 1829.*

*Utica Ins. Co. v. Kip.*

---

### The Utica Insurance Company vs. Kip.

Motion to set aside report of referees. The plaintiffs declared on a promissory note for $3000, bearing date the 26th June, 1818, and payable the 4th September then next. The declaration also contained the common money counts. The defendant pleaded the general issue and the statute of limitations; and gave notice of set-off. The plaintiffs replied a new promise. The cause was heard before referees in October, 1829. The note declared on was produced. On the back of it was an endorsement subscribed by the defendant, engaging to pay the balance due on it on demand, the endorsement bearing date the 25th June, 1824.

On the 8th January, 1817, the plaintiffs discounted a note for the defendant to the amount of $2800, which note was

*margin: A promissory note for the payment of money void in law, so that a suit cannot be maintained upon it, may be used nevertheless as evidence of an acknowledgment of indebtedness to take a case out of the statute of limitations.*

ALBANY,
October, 1829.

Utica Ins. Co.
v.
Kip.

payable on the 11th April, 1817, and on which a discount of $50,64 was taken in advance, (the interest, at the rate of seven per cent. per annum, amounting to only $49,64.) This note was twice renewed by notes payable in six months each, on which discounts were taken in advance, ($200 were added to the original amount by a loan, subsequent to the date of the first note.) The practice in the office of this company in calculating *interest* upon notes discounted was to reckon 90 days as the *fourth* of a year, 30 days as the *twelfth* of a year, and 3 days as the *tenth* of a month. This mode of calculation was adopted by the clerks of the institution, on the suggestion of the secretary of the company, as a short and convenient mode of ascertaining the interest to be charged. The secretary, however, on the hearing before the referees, testified that it had not occurred to him that such mode of calculation produced more than *seven* per cent. per annum, or that the company were receiving more than seven per cent. interest on the loans made by them. It also appeared that the defendant, who had been one of the directors and president of the company from the commencement of its operations in 1816 until 1824, on the trial of a cause between the plaintiffs and one of its debtors, had, previous to the hearing of this cause, testified that he believed the practice had been in the company to reckon thirty days to a month in the calculating of interest; that no direction, however, had been given by the board as to the mode in which interest should be computed; that the board did not know what amount was taken, either generally or in any particular case; that it was the intention of the board to take legal interest and no more; that the board never knew that they had in any case taken more than legal interest; and that if they ever did take more than legal interest, it was contrary to their intention and in utter ignorance of the fact; that it was not by design, but by mistake.

The plaintiffs also claimed to recover, besides the balance due on the note, the sum of $5,500 advanced the defendant in the winter of 1816, '17. It appeared that the company were apprehensive that the legislature would do something

hostile to their banking powers at the session of 1816, '17,
a resolution having been adopted requiring the attorney gen-
eral to institute proceedings against the company. The de-
fendant said that he thought that with that sum he could
ward off or prevent any acts of hostile legislation. The mo-
ney was accordingly paid to him, to shield the company from
any legislative enactments injurious to them ; and it was un-
derstood that the defendant should never be called upon to
explain how he expened the money. This transaction was
between the secretary of the company and the defendant. It
was consequently communicated to the board in August,
1817, and the defendant was never called upon to account for
the money thus paid him. This claim was rejected by the
referees.

The defendant set up a claim for services rendered by him
as president of the company, and also for the amount of forty
shares of stock of the company belonging to him, appropriat-
ed by the company. In relation to the claim for services, it
appeared that a resolution was passed by the board in Octo-
ber, 1816, allowing the sum of $800 to the defendant for his
services as president *during the first year* of their business,
and that the principal business done by him as president was
during that year. As to the claim for the shares of stock, it
appeared that they were forfeited, agreeable to the charter of
the company, for the non-payment of a call in 1824. These
claims were also rejected.

The referees reported in favor of the plaintiffs $1729,02, the
balance claimed to be due on the note. A motion was [now
made by the defendant to set aside the report.

*C. P. Kirkland,* for defendant. Taking an excess of inter-
est beyond the rate established by law, under a rule voluntarily
adopted by a monied institution, is sufficient evidence of a
corrupt agreement to avoid a note, for usury. (2 Cowen,
678, 766.) The note also is void, being taken in violation of
the restaining act, the plaintiffs not having banking powers.
If the note be *void,* the plaintiffs cannot recover on the money
counts under the contract of loan, their claim being bared by

the statute of limitations. The plaintiffs cannot avail themselves of the indorsement on the note in which the defendant promises to pay the balance which should be found due upon it, because it is in fact but a new security for the debt as distinguished from the contract of loan. If the note be void, it is as if it were a nullity, and is void for every purpose.

*W. H. Maynard & Greene C. Bronson*, (attorney general) for the plaintiffs. Admitting the taking of an excess beyond the legal rate of interest is evidence of usury, it is but *prima facie* evidence and may be rebutted. Unless there was an *intent* to do an unlawful act the statute has not been violated ; it is most clearly shewn that such intent did not exist, as well by the solemn declaration of the defendant himself as by the evidence on the part of the plaintiffs.

If the defence of usury was admissible by a stranger, it should not be allowed to the defendant, who, as a director, was a trustee for others. It is against morality and the principles of public policy that he should be permitted to say when called on for the payment of a debt due to the company, true, the money was lent to me, but I made a corrupt agreement with myself acting as your trustee, and you therefore cannot sustain your action.

The plaintiffs in this case being entitled to recover under the contract of loan, though the security or note should be adjudged void, may avail themselves of such evidence as they can command to substantiate their claim ; therefore, though the note be adjudged void, its existence remains and may be used as evidence of the contract of loan. It is an acknowledgment in writing that so much money was lent.

*H. R. Storrs*, in reply. The liabilities of the defendant as a trustee, if any, cannot be objected to the defence he sets up. This is not a suit to account for the trust-funds, the defendant is sued as a debtor. If he has abused his trust, he must be called upon to anwser in a different manner and before another tribunal. He is now in a court of law, and entitled to his legal rights.

*By the Court*, SAVAGE, Ch. J.   I am inclined to think the note *void*, but not for usury, for by the defendant's own account of the operations of the company, the excess was taken by mistake.   In this particular this case is distinguishable from the cases referred to by the defendant's counsel.   The taking more than lawful interest, and casting it upon an erroneous principal unexplained, would be evidence of a corrupt agreement ; but here both parties have sworn to a *mistake ;* the inference of law, therefore, is *rebutted* by the oath both of the defendant and of the officer who recommended the erroneous mode of casting interest.   The note is void because taken in violation of the restraining act, forbidding incorporated companies from carrying on banking operations, unless expressly authorized by their charter.

ALBANY,
October, 1829.

Utica Ins, Co.
v.
Kip.

But it has been decided in this cause, (8 Cowen, 20,) that though the *security* be void, the contract of loan is not.

In answer to this view of the case, the defendant relies upon the statute of limitations, and it therefore becomes necessary for the plaintiffs to shew a recognition of the demand within six years or the remedy is gone.   The evidence on this point is the indorsement on the back of the note.   This is certainly an admission that the debt is unpaid, and though the note is inoperative as a security for the money, is it not an acknowledgment sufficient to take the case out of the statute ?   I am inclined to think it is.

The claim of the plaintiffs for the $5,500 was properly rejected.   Independent of the suspicious purpose for which it was paid to the defendant, there is nothing in the facts from which a promise to pay may be implied ; the defendant was to use the money at his discretion, and it was understood that he was never to be called upon to explain how he expended it.   The act of the secretary was confirmed by the acquiescence of the board, who, though informed in 1817 of the transaction, have not until now called upon the defendant to account.

The referees also did right in rejecting the claims of the defendant.   For the first year of the operations of the company a salary was voted to him as president.   It was con-

fined, however, in its terms to that year. His services afterwards must be considered gratuitous. Unless an express agreement is made, it is understood that the services of the president and directors of monied institutions are gratuitous. The defendant's claim for the shares of stock was shewn to be unfounded, they having been forfeited according to the charter of the company.

I am of opinion that the motion to set aside the report of the referees should be denied.

Motion denied.