## SUSSEX BANK v. BALDWIN AND SHIPMAN.

In case, on rule to show cause against a new trial.

A presentment and demand for payment of a promissory note, may be made at the drawer's office or regular known place of business for the transaction of his moneyed concerns, as well as at his residence.

Such presentment and demand may be made by a person not a notary public. An authority therefor, may be created by parol. And the mere possession of the paper, is evidence enough of such authority.

A notarial demand, and protest of non-payment of a promissory note, is not necessary to fix an indorser's liability.

Any person may present at its maturity, a promissory note of which he is put in possession, and if paid in the *ordinary course of business*, and taken up, the payment is good: and if not paid, the demand is good as a ground-work for notice to the indorsers, and that without any protest.

A notary's name may be printed or written at the foot of the notice to indorsers, that a note is dishonored.

In order to make an indorser liable, notice of non-payment of the note, must be sent to him, if by mail, on the day next after the third day of grace, unless the mail depart at an early hour in the morning, before a party with reasonable diligence could mail his notice.

The general rule is that a party is bound to exercise reasonable, not excessive diligence.

Against indorsers of a promissory note, a clear case of waiver of notice must be made out. Nothing short of an *unconditional promise* to pay, made with a full knowledge of the laches of the holder of the note, is sufficient. A knowledge that the maker could not pay, does not dispense with strict proof of demand and notice.

The question of usury in banking discounts, considered.

*Armstrong* and *Williamson,* for rule.

*J. W. Miller* and *P. D. Vroom,* contra.

DAYTON, J.   This case was tried at the Sussex Circuit of May, A. D. 1838, and verdict had for the plaintiff.   Sundry reasons are now relied upon to set the same aside, and I will consider them in their order.

The defendants are the indorsers of a promissory note made by Conrad Teese, October 24, 1836, for five hundred and five dollars and sixty-one cents, payable six months after date to the order of Wm. A. Baldwin & Co., (the defendants,) and by them indorsed to the plaintiff.   The first reason assigned is, that the note was not duly presented to the maker, for payment. That it was presented at an *improper place,* to wit, the office of Teese, the maker, and by an *improper person,* to wit, one Dennis, who swears that he acted as the clerk and under the directions of Wm. Tuttle, who was himself merely the agent of James Hedden, the notary public.

As to the place of presentment, the objection may be disposed of very briefly.   It is a point not properly arising under the evidence in the case.   Dennis, the witness, swears that Teese, the maker of the note told him, Dennis, to present his notes for payment at that place, and that he had been in the habit of doing so. This estops Teese from objecting to the place of presentment; and that which is good against the drawer, is good against the indorser. *State Bank* v. *Hurd,* 12 *Mass.* 172; *Whitwell* v. *Johnson,* 17 *Mass. R.* 449. But it is thought advisable that this point be put at rest in this state, by an expression of opinion by this court.

It appears by the evidence, that the office in question was the regular place of business of the maker; and I have no doubt where a person has an office or known and settled place of business for the transaction of his moneyed concerns—whether he be a banker, broker, merchant, manufacturer, mechanic, or dealer in any other way, a presentment and demand at that place, (as well as a presentment and demand at his residence,) is good in law. It must not however be a place selected and used temporarily for the transaction of some particular business, as settling up some

old books or accounts merely, but his regular and known place of business for the transaction of his moneyed concerns. The counting room of a banker or merchant, may be a proper place for a demand, though the manufactory or work shop would not. Yet if the manufacturer or mechanic have an office, or known place of business for the purpose aforesaid, a good demand may be made there. *Bank of Columbia* v. *Lawrence*, 1 *Peters,* 582; *Williams* v. *The Bank of U. States,* 2 *Peters,* 100; *Byles on B.* 118; *State Bank* v. *Hurd,* 12 *Mass.* 173.

Nor is there any thing in the objection that the presentment was made by an *improper person.* It appears by the evidence that Tuttle did the business of Hedden the notary public, and it must have been with the consent and knowledge of the Bank, that he employed and directed Dennis, who was his clerk, to present the note in question to the drawers, and put him in possession of the note for that purpose. If the note had been paid on presentment, he could and would have delivered it up to the drawers, and that would have exonerated them from further liability. An authority to make a demand, may be created by parol, and the mere possession of the paper, is evidence enough of such authority. 3 *Kent C.,* 108; *Bank of Utica* v. *Smith,* 18 *J. R.* 230; *Shed* v. *Brett,* 1 *Pick.* 401; *Morris* v. *Foreman,* 1 *Dal.* 193; *Freeman and others* v. *Boynton,* 7 *Mass.* 487.

There is an impression current in some degree, even with the bar, that a presentment of a note, must be by a notary, or at least on his behalf, and that he must *protest* it upon non-payment, before the indorser is liable. But this is not so. The record of a demand and notice &c. by a notary, entered in his book, according to our statute, of 21st February, 1829, *Harr. C.* 249, may serve to refresh his memory, or in case of his absence or death, it may be used as evidence of the facts contained in it; but such demand and protest by a notary, are not essential to a recovery against the indorser. It was not so by the common or commercial law, nor is it required by our statute. If a notary act in the premises, and make the protest, although sanctioned by general custom, it is not strictly an official act. *Nichols* v. *Webb,* 8 *Wheat,* 326; 3 *Kent C.* 93–4; 1 *Saund. on Pl. & Ev.* 295.

Any person may present at its maturity, a promissory note of which he is put in possession, and if paid in the *ordinary course*

*of business,* and taken up, the payment is good; and if not paid, the demand is good as a ground work for notice to the indorsers, and that without any protest. The rule is otherwise as to foreign bills of exchange, which must be protested by a notary, and their official seal is plenary evidence in all foreign courts and countries, of the dishonor of the bill, (*vide* cases above cited.)

2. The next objection, is to the notice to the indorsers. The name of James Hedden, the notary public, was *printed* at the foot of the notice, not written; and this is assigned for error. There is nothing in this objection. The law prescribes no form of notice, its object is merely to apprise the party of the non-payment—to put him upon inquiry, that he may protect his rights. This is as well done by a notice with a printed, as with a written name.

The signature of the notary, would carry with it in a large majority of cases, no higher degree of certainty; than the printed name, for it must in most cases be unknown to those to whom notices are sent. The notice in this case, came from a proper source, and stated the proper facts; that is enough. It is needless to cite authorities upon this point.

3. The next objection is, that the notice was not sent in *proper time.*

The Sussex Bank was the owner of the note, and had sent it indorsed to the Newark Bank for collection. The demand of payment was made on Teese the maker, at Newark, where he resided on the 27th April, 1837, and on the same day, notice of non-payment was directed to S. D. Morford, the cashier of the Sussex Bank, at Newton. In this notice to Morford, was inclosed another directed to the defendants in this suit, with the name "James Hedden, notary public," printed thereto, and none other. It appeared that Tuttle who forwarded the notices for the notary, did not know that the defendants resided in Newark, but supposed them to reside in Sussex. Morford swears that on the notice thus directed to the defendants, he wrote "Newark, New Jersey," and "thinks he sent it by the next mail." But upon cross examination, he said "he distinctly recollected putting the notice of protest directed to the defendants into the post-office at Newton, but could not recollect at what time he did so. Could not tell precisely what was at that time the course of mail

between Newton and Newark, but thought that it was carried each way, three times a week." And upon a re-examination, he said " he seldom received such notices, but when he did, was in the habit of sending them by the next mail : that he had no doubt he put the notice for the defendants, into the post office at Newton, the day after he received it, *but could not say whether it was in time for the next mail.*" And upon this branch of the case, the judge charged the jury, that if Mr. Morford the cashier, placed the notice in the post office, directed to the defendants, *on the day after he received it,* it was sufficient and legal evidence of notice to the defendants.

It is admitted that every bona fide indorser who may receive a notice of non-payment, has a day to notify his immediate indorser ; but it is contended that this rule extends only to real holders and indorsers, not to such as are mere agents. That the Sussex Bank had no right by appointing the Newark Bank its agent, to extend the time allowed it by law for notifying the indorsers, of the non-payment of the note really held and owned by it. It would appear reasonable that the holder of a note should not for his own accommodation, thus vary the rights of an indorser : but the authorities grounded I presume upon commercial convenience, are the other way.

It has long been settled that a banker who holds a bill for a customer, is entitled to a day to give him notice, and the customer or principal is entitled to another day to give his indorser notice ; *Firth* v. *Thursh,* 15 *Eng. C. L.* 244–5 ; *Robson* v. *Bennett,* 2 *Taunt.* 388 ; *Haynes* v. *Birks,* 3 *Bos. & P.* 599 ; *Langdale* v. *Trimmer,* 15 *East* 291 ; *Bray* v. *Hadwen,* 5 *M. & S.* 68 ; *Scott* v. *Lifford,* 9 *East,* 347 ; *Daly* v. *Slatter,* 4 *Carr. and P.* 200 ; but in this last case, certain points were reserved, for which, see case; and the same principle is laid down in *Mead* v. *Engs,* 5 *Cowen,* 303, where it is held that one to whom a bill or note has been indorsed merely as agent to collect, (*e. g.* a bank,) is considered as a holder for the purpose of giving and receiving notice of non-payment. See also, *Colt* v. *Noble,* 5 *Mass.* 167 ; *Tunno* v. *Lague,* 2 *J. C.* 1. It was said on the argument that no case could be found where this rule had been applied unless the notice was from one indorser notifying another ; and that in the case now under consideration, the notice was not from the Sussex Bank, which

was the indorser, but from the notary public of the Newark Bank, whose name was attached to it. Admitting this for the sake of argument to be so, yet the case of *Tunno* v. *Lague*, lays down the rule (which is founded in reason too) that if the agent undertakes to give notice to the other indorsers, as well as his principal, the notice will be good if given as early as it could have been received from the principal. If therefore this is to be considered a notice from the notary, and not from the Sussex Bank, it is good if given as early as the Sussex Bank was bound to give it. But admitting this to be so, an important question yet remains. Was the notice in time, supposing it to have come from the Sussex Bank? There is nothing wherein greater strictness is required, than upon this point. It is laid down that notice of non-payment, *cannot be left to inference; without positive proof. Chitty on B.* 314; *Assignees of Schiffner v. Sherwood,* 2 *Eng. C. L. R.* 405.

There is certainly no positive proof that the letter containing the notice of non-payment, was put in the post office for the defendants, in time for the mail of the day next after it was received by the Sussex Bank. Morford says in substance, that he thinks he sent the letter by the next mail; but upon a further examination, he says he does not recollect the course of the mails at that time, and although he has no doubt he mailed it next day, he cannot say whether it was in time for the mail. There is therefore no positive proof of that fact, and we cannot infer it. Nor was it even submitted as a question of fact to the jury; on the contrary the charge of the court was, that the indorser had the entire day to put the notice in the post office, without reference to departure of the mail.

Does the law require that the notice be put in the post office in time for the mail of the day next after the indorser receives it, or has he the whole of that day to prepare it?

*Kent* in his commentaries, 3 *Vol. p.* 105 says, the modern doctrine is, that the notice must be given by the first direct and regular conveyance: meaning thereby " the first convenient and practicable mail that goes on the day next to the third day of grace; so that if the third day of grace be on Thursday, and the drawer or indorser reside out of town, the notice *may* indeed be sent on Thursday, but *must* be sent by the mail that goes on Fri-

day." Kent says in a note, that the case of *Hawkes* v. *Salter*, 4 *Bing*. 715, is a relaxation of the strictness of that rule: and yet that case does not appear on examination, to militate against the general rule that the notice must go by the first *convenient* and practicable mail, on the day next after the third day of grace. In the case of *Hawkes* v. *Salter*, the notice should have been sent on Monday, but the only mail on Monday went out at half past nine in the morning, and one of the grounds taken was that the party was not bound to get up at an unseasonable hour, to send his notice. The court held that notice sent on Tuesday morning was in time. The general principle undoubtedly is, that a party is bound to exercise reasonable diligence only, not excessive. If therefore the only mail of the day, leave at an early hour in the morning—before a party in the exercise of reasonable diligence could mail his notice, he may properly send it by the next opportunity. The case of *Firth* v. *Thursh*, 8 *B. and Cress*. 387, was decided on entirely different grounds: an attorney after receiving information of the indorser's place of residence, was allowed in that case one day to consult his principal, upon the ground that he stood in the light of a banker who holds paper for his principal. These cases of relaxing, cannot be considered as conflicting with the general rule laid down by *Kent*. In *Lenox* v. *Roberts*, 2 *Wheat*. 373 ; Chief Justice Marshall, in delivering the opinion of the court, says " a demand of payment should be made on the last day of grace, and notice of the default of the maker, be put in the post office early enough to be sent by the mail of the succeeding day." The same point substantially was ruled in *The U. States* v. *Adm'x. of Barker*, 4 *Wash. C. C. R.* 464 ; *Mead* v. *Engs*, 5 *Cowen*, 303 ; *Bank of Alexandria* v. *Swann*, 9 *Peters*, 45 ; and in *Whitwell* v. *Johnson*, 17 *Mass*., 454, it was ruled that if there be two mails on the day after the note falls due, it is good if the notice go by either of them.

The English cases, more particularly those of a late date, are to the same point. In *Smith* v. *Mullet*, 2 *Camp*. 208, the same rule was applied *between indorsers*. The fourth indorser having received notice of non payment, on the 20th of the month, he mailed a notice to his immediate indorser, on the evening of the 21st, but so late that it was not delivered until the morning of the 22d. This was held by Lord Ellenborough to discharge not only the

defendant, but the other indorsers, although they actually received notice of the dishonor during the day of the 22d; and it was said that although a party has an entire day, yet he must send his letter within post-time of that day. That if he retain it until after the mail is gone, he might just as well retain it until the next day: the consequence is, that an entire day is lost.

The opinion of Chief Justice Abbott, in *Geill* v. *Jeremy* and *Blagg*, 1 *Moody and M.* 225; as cited and reported in *Chitty on B.* 7 *Am. Ed.* 316; is but a reiteration of the same rule. He says it is well settled, that a party who receives notice of the dishonor of a bill, is not bound to forward notice to the prior party, till the next day, and it then suffices if he puts a letter in the post on any following day, so that it be forwarded by the *next practicable* post. See this case 22 *Eng. C. L. R.* 249; or *M. and M.*, 61, *not.* 225. See also, *Hilton* v. *Fairclough*, 2 *Camp.* 633; *Williams* v. *Smith*, 2 *B. and A.* 500; *Byles on B.* 160.

It would certainly simplify this matter to lay down the rule, that a party has the next day entire to prepare and mail his notice, without reference to the time of the departure of the mail. But this would be in violation of the authorities and against the general principle which requires the exercise of at least reasonable diligence. Many of the authorities say, the party has an entire day to give the notice; and so he has, but not an entire day to prepare it. He must give or send his notice on the next day if he can; if he neglect it, until after the departure of the mail, he does not give or send his notice the next day, but in point of fact, the day after the next, or at some other and perhaps more distant day. It is safe therefore to adhere to the rule, that the notice must be sent on the day next after the third day of grace, unless the mail of that day go out at so early an hour as to render it impracticable by the exercise of a reasonable diligence. 4 *Bing.* 715; 1 *Mood P.* 750; 5 *M. and S.* 68; 2 *B. and A.* 501. No precise hour can be named, particularly in the country, where the term "business hours," has a somewhat vague and indefinite meaning. Cases will occasionally arise, where it will become necessary for the court to direct the jury whether due diligence has been exercised, supposing certain facts to be proved. *Aymer* v. *Beers*, 7 *Cowen*, 705; *Bank of Columbia* v. *Lawrence*, 1 *Peters*, 578.

Applying the above rule to the evidence in this case, the plaintiff ought not to recover ; it certainly is not shown that the notice was *sent* the next day after it was received. It was mailed, but whether in time for the post, the witness does not pretend to say, and that is a fact which he must make out. The importance of sustaining this rule, is evident from the facts of this case. The mail between Newton and Newark, being only tri-weekly, if the letter were mailed after the post left, it was not one day only lost, but two or perhaps three. The charge of the court upon this point was clearly erroneous ; and for this reason, if there were no other, the verdict must be set aside, unless there has been a waiver of notice, on the part of the defendants, as is contended.

Mr. Morford swears " that a week or two before the note of Teese came due, he received a private letter from Baldwin, one of the defendants, in which he (Baldwin) stated that Teese could not pay it, and requested to have it renewed." John Young, another witness, swears that Baldwin " handed him a note of Conrad Teese, indorsed by the defendants, and wished him to try and get the plaintiff to take it in renewal of a note they then held : he (Baldwin) stated that the note of Teese which they wished to take up, had been protested, and that he had received a notice of protest through the bank."

I was at first doubtful whether this evidence might not be considered as showing an implied waiver of demand and notice. But upon looking into the authorities, I am satisfied that it cannot be so considered. We are to bear in mind, that the *defendants are not drawers* of a bill of exchange, *but indorsers* of a promissory note, and as against them, a clear case of waiver must be made out. Nothing short of an *unconditional promise* to pay, made with a full knowledge of the laches of the holder of the note, is sufficient. A knowledge that the maker could not pay, does not dispense with strict proof of demand and notice. In *Esdaile* v. *Sowerby,* 11 *East,* 117, Lord Ellenborough said, that a knowledge of the insolvency of the drawer, and acceptor of a bill, and that it must be dishonored when it became due, does not dispense with proof of actual notice of the dishonor. And this principle may likewise be found in many other cases, as well as in the elementary books. 2 *H. Blac.* 609 ; *Doug.* 496 ; 8 *East,* 245 ; 2 *Bos. and P.* 277 ; 6 *B. and C.* 373 ; *Chitty on B.*

7 *Am. Ed.* 246 ; 1 *Saund on Pl. and Ev.* 292 ; *Thornton* v. *Wynn*, 12 *Wheat.* 183.

The admission therefore that Teese could not pay the note, does not affect the defendants' right to strict proof of notice. Nor does the offer to substitute a new note, *drawn by Teese,* and indorsed by the defendants, affect this right. It was not an *unconditional promise* to pay, made by the defendants. Nor if it were, has it been shown to have been made with a full knowledge of the laches of the holder, by which they were legally discharged from all liability. All this it is necessary to prove, before we can imply a waiver of notice. 1 *Harr.* 402 ; 1 *D. and E.* 712 ; 12 *Wheat. R.* 183 ; 5 *Burrow* 2670 ; *U. S. Bank* v. *Southard,* decided at the present term of the court, *ante,* 473.

An admission that notice of protest, had been received through the bank, is nothing. It does not appear *when* it was received. It has never been disputed that a notice was received ; but the allegation is that it was not received in time, and it was the plaintiff's duty to show that it was received or rather that it was mailed in time, which it has failed to do.

There was another point made on the argument, upon which I shall do little more than express an opinion, referring to the opinions of my brethren, for the authorities. It was alleged that there was *usury* in discounting this note, by the Sussex Bank. It appears by the evidence of Morford, the cashier, that in making his calculation, he considered thirty days, a month, and 12 months, a year ; and that pursuant to a proposition of the defendants, he deducted from the net proceeds of the note, one per cent. for a draft upon Newark, where at the defendants' request, the proceeds of the note were to be paid.

The mode of calculation adopted, might certainly have presented a serious question for the court, had it stood alone, but Morford swears that he was not aware that the bank received by that mode of calculation, more than six per cent. that he intended to take no more. If this be so, the taking of more than legal interest was a mistake ; as much so as if it had been a mistake in adding or subtracting figures. This is the view taken by Savage, C. J., in the case cited from 3 *Wend.* 369. Had Morford known that he was taking more than six per cent. (even though he had supposed that he was legally entitled to make his

calculation in that way) would present a very different question. The law will infer a corrupt intent, where the fact of taking more than six per cent, *knowingly* is proved, but it cannot infer such intent where it is done in ignorance and mistake of *facts*.

As to the charge of one per cent. for a draft, it was fairly put to the jury by the judge who tried the cause, and their finding is conclusive upon that question. They were told that if the charge of one per cent. were unreasonable, and a part of the original agreement to discount the note, and if it were made corruptly, as a contrivance and with a design to evade the statute, it was usurious. This was doubtless the law, and the jury have, it is to be presumed, rightly applied the law thus given them, to the facts of the case. For reasons before stated, this rule must be made absolute.

HORNBLOWER, C. J., and FORD, J., concurred. WHITE, J. did not hear the argument, and gave no opinion.

NEVIUS, J. This cause was tried at the Sussex May Circuit, in 1838, and a verdict rendered for the plaintiff. The suit was against the defendants as indorsers of a promissory note made by one Conrad Teese, dated, Oct. 24, 1836, for five hundred and five dollars and sixty-one cents, payable in six months, to the order of the defendants and indorsed by them. No objection exists to the pleadings.

Upon the trial, the plaintiff proved by Alfred L. Dennis, that he presented the note in question, at the office of the drawer, in Newark, (which was his place of business,) for payment, on the 27th April, 1837, to the clerk of the drawer, and demanded payment. That the drawer was not in and the clerk replied he could not pay it. That he had been in the habit by Teese's direction, of presenting his notes there for payment, and that in making the presentment he acted as the agent of Tuttle. That the defendants as well as Teese resided at that time in Newark.

William Tuttle testified, that he received the note from the Newark Banking and Insurance Company, to be presented for payment, and that he handed it to Dennis for that purpose. That on the 27th of April, 1837, he made out two notices of protest,

one to the plaintiff and the other to the defendants, and inclosed the latter in the former and directing it to S. D. Morford, Cashier, Newton, put them in the post office at Newark the same evening. That each of the notices had the name "James Hedden, notary public," printed at the bottom; that witness was the agent of Hedden and attended to such business for him and kept the notary's record for him; that he did not at that time know where the defendants lived, but supposed Baldwin lived in Sussex.

It was further proved by the Cashier of the Sussex Bank, that the indorsement on the note was in the hand writing of Baldwin one of the defendants; that the notices came to his hands through the mail, and that the one addressed to the defendants, he directed to Newark, N. J. and thinks he sent it by next mail.

He further testified that a week or two before the note fell due, he received a private letter from one of the defendants, stating that the drawer could not pay it, and requesting a renewal; that the note was specially indorsed by him as Cashier and sent to the Newark Banking and Insurance Company for collection. He also testified that he distinctly recollected putting the notices in the post office at Newton, but could not recollect at *what time;* could not tell precisely the courses of the mail between Newton and Newark, but thought it was three times a week. He seldom received such notices, but when he did, his habit was to send them by *next mail.* That he had no doubt he mailed the notice the day after he received it, but would not say it was in time for next mail.

John Young a witness for the plaintiff testified, that on the 3d or 4th of May, 1837, Baldwin, one of the defendants, handed him a note of Teese, and wished him to get the plaintiff to take it in renewal of one they held of Teese which he (Baldwin) said had been protested, and that he had received a notice of protest through the bank.

The plaintiff having further proved the signature of the drawer to the note, and read the same in evidence,

The defendants then moved the court to nonsuit the plaintiff on the ground that they had failed to prove a legal demand of payment of the drawer or legal notice of non-payment to the indorsers, which motion being overruled by the court,

The defendants then again called the Cashier of the plaintiff,

who testified that the note in question was discounted by the plaintiff in January, 1837; the entry is on the 9th of January, but he thinks it was discounted a day or two after that date. The discount charged was eight dollars and ninety-four cents. The note is for five hundred and five dollars and sixty-one cents, and came due the 27th day of April, 1837. Four hundred and ninety-six dollars and sixty-seven cents was carried to the plaintiff's credit. The discount was computed upon the allowance of thirty days to the month, and twelve months to the year. That this is the usual mode in that as well as in other banks. That shortly after, witness sent to the defendants, a draft or check on the Newark Banking and Insurance Company, signed by himself as Cashier, for the net proceeds of the note, deducting one per cent. of the amount, which went to the benefit of the plaintiff. The plaintiff sometimes charged one per cent. and sometimes half of one per cent. for drafts. The witness knew of no rule by which the charge for drafts was regulated. He further testified that, in November, 1836, Baldwin, one of the defendants, told him if he would get notes discounted by the plaintiff, he would allow them one per cent. for drafts, and at the same time handed him some notes, among which was the one in question, for the purpose of getting them discounted by plaintiff.

The witness being cross-examined, testified that in calculating the discount on the note, he intended to take only at the rate of six per cent. per annum. That the notes handed him by Baldwin were laid before the directors twice, but were not discounted. That about two months after receiving the notes, Baldwin wrote to him requesting him to return the notes if there was no prospect of having them discounted; mentioning this to the President of the Bank, they agreed to discount the notes. There is no established rule of charge for drafts. Plaintiff usually charges New York merchants, one half of one per cent. for collecting notes and remitting the proceeds by draft on New York. The Newark Banking and Insurance Company charged plaintiff nothing for collecting Newark notes sent them for collection, nor did the plaintiff incur any charge in collecting Newark notes through that bank, except postage. That at the time the said note was discounted, there was no exchange between Newark and Newton, and the usual charge for a draft at that time, was

half of one per cent. That plaintiff frequently incurred risk and expense in sending funds to Newark, to keep their account good.

Upon this evidence, the court charged the jury, in substance, that if they believed from the evidence, that the note was on the 27th of April, 1837, presented by the notary or his agent or clerk, at the maker's place of business, and payment demanded, such was a legal demand and presentment. That the form of the notice was sufficient. That the cashier of the plaintiff was to be considered as the second indorser. That if they believed the testimony of Mr. Tuttle, touching the notices, and that the cashier of the plaintiff directed the notice to the defendants, and placed it in the post office at Newton, the day after he received it, it was sufficient legal evidence of notice.

That although the mode of calculating interest adopted by the plaintiff, gives more than six per cent. per annum, yet whether it amounted to usury, was a question of some doubt and difficulty; but recommended to the jury not to consider it as evidencing usury, if they believed that it was the ordinary and usual mode practised by the bank and others, and adopted for convenience and not with a corrupt intent.

That the law permitted the plaintiff and others who transmitted money, to charge a fair and reasonable commission to cover the expenses of such transmission. But if the jury believed the charge of one per cent. in this case was unreasonable and a part of the original agreement to discount the note, and that it was made corruptly as a contrivance and with a design to evade the statute and make more than six per cent. on the discount, they ought to consider it usury. That the proper amount of such charge was, to a great extent, matter of judgment and opinion, and even if the jury should think that the officers of the bank had, in the exercise of that judgment and opinion in this case, made a mistake of a few dollars, it would be hard that the plaintiff should on that account lose the whole debt.

Upon this evidence as substantially stated and under this charge of the court, the jury rendered their verdict for the plaintiff.

### OPINION.

The defendants in support of their motion to set aside this verdict, have assigned and insist upon the following reasons:

First, That the evidence offered by the plaintiff, was not sufficient in law to maintain and prove the issue on their part.

Second, That the court refused to nonsuit the plaintiff.

Third, That the charge was incorrect and contrary to law, and

Fourth, That the verdict was contrary to law and evidence.

In support of the first reason assigned, the defendants contend,

First, That there was no evidence of a legal presentment of the note, and demand of payment. And

Second, That there was no evidence of a lawful notice of non-payment, given to the defendants.

The demand was made by a clerk of Tuttle, who was the agent of Hedden the notary, and was made at the office of the maker of the note, and of his clerk on the day the note fell due. In this I perceive no defect of proof. It is not necessary that the demand should be made by a person clothed with official authority, or by the bona fide owner of the note, in order to charge the indorser. Any agent of the owner may make the presentment, and demand payment, and he who on the day a note falls due, makes the demand with the note in his hand, will be esteemed as owner or the agent of the owner duly authorized; and payment to him will be a good and legal discharge of the maker. In all ordinary cases the mere production of the note, accompanied with a demand of payment, will be sufficient to warrant payment to him who produces it. *Chitty on Bills,* 281. But if a note is presented under circumstances calculated to excite suspicion of the holder's right or interest, or of his authority to receive payment, a payment to the holder may or may not be a discharge, according to the circumstances of the case. *Byles on Bills,* 130. In this case there were no circumstances to excite suspicion of the honesty of the demand; and if the drawer had paid the amount to Dennis when demanded, no one can doubt, but that he would have been released, and if the money had been lost, the Newark Banking and Insurance Company would have been responsible to the plaintiff. They might perhaps have had their remedy over against their notary for a violation of a trust, in the employment of a dishonest and unsafe agent, but the maker would not have been bound to pay the note a second time. When one or two innocent persons must suffer from the act of a third,

he who has enabled such third person to occasion the loss, must sustain it. *Byles on Bills*, 130.

But again, it is insisted that the presentment and demand was not made at the proper place. That it should have been at the residence of the maker and not at his office. I do not so understand the law, nor have I ever seen a case in which such doctrine has been held. It would seem to be a plain rule of common sense, that as a demand is to be made during ordinary business hours, it should be made at the maker's business residence, where he keeps his books, his accounts, transacts his business and employs his clerks and agents. A demand at his dwelling house, would certainly have been sufficient, but it was no less so at his office. Another and conclusive answer however, is found in the evidence of Dennis, who testifies that he had been in the habit of presenting Teese's notes at that place and by his express direction. Such a practice sanctioned by the maker's instructions, would of itself legalize this demand if otherwise there were any doubt about it.

The second objection urged under the first reason assigned is, that there was no evidence of a legal notice of non-payment, to the defendants. The notice to the defendants, was enclosed in the one directed to the plaintiff, and left in the post office the same day the note was protested. Here certainly was no want of due and legal diligence; and the cashier of the Newton Bank testifies, that upon its being received by him, he directed it to the defendants at Newark where they resided, and as he *thinks*, sent it by the next mail. That he distinctly recollected putting the notice in the post office. That it was his habit to send such notices by next mail, and had no doubt that he mailed it the day after he received it, but could not say whether it was in time for the next mail, as he did not then recollect the course of the mail. The name of the notary annexed to the notice, was in print and not in his hand writing. If there be any defect in the proof of notice, it must be either in the form of it, the time of transmission, or the person to whom it was sent.

And as to the form—the substance of the notice, its direction and address to the defendants, sufficiently disclosed to them the non-payment of the note, and the design of the holders to look to them for payment. The notary's name being in print, consti-

tutes no objection, was not calculated to mislead the parties, and is as effectual as if written. The notice to the Newton Bank was beyond all question mailed within the time required by law, and I am of opinion that the evidence touching the notice to the defendants, by the cashier of that bank, proves with sufficient certainty, that it was mailed in time for the mail, if the mail did not leave at a very early hour in the morning of the next day. I know that this is considered a question of law upon which the court is to decide when the facts appear, and that strict proof is required. The cashier has gone as far as a witness might be expected to go in establishing the fact of the notice being mailed in time for the mail of next day. He swears that it was his habit in such cases to do so, that he believed he had done so, that he had no doubt of its being mailed the next day, and although he could not say positively, from memory, that it was in time for the mail of that day, because he did not know at what hour the mail left, I consider the proof as sufficient to satisfy the requirements of the law, and that due and reasonable diligence was exercised on the part of the holder. It was sufficient too, that the notice was sent to the plaintiffs, by the notary; for the Newark Bank, whether considered as the owner of the note or holding it only for collection, was bound to notice its immediate indorser, to whom it looked for payment, and no one else; 5 *Cow.* 303; and in our own court, the case of *State Bank* v. *Ayres*, 2 *Hal.* 130.

I am therefore of opinion that neither the first nor second reason assigned, is sustained by the case, and that the judge did right in refusing to nonsuit the plaintiff.

It remains then to inquire whether the charge of the court was incorrect and contrary to law and whether the verdict was against law and evidence. The defendants set up usury in the contract by way of defence, and allege in the first place, that taking the interest in advance, was usurious; Second, That the mode of computing the interest, adopted by the plaintiff, was usurious, and lastly, that the charge of one per cent. for the draft, was usurious. If in truth it is so, the verdict cannot stand. The practice of taking the interest in advance has so long prevailed and seems so firmly settled by courts, that I am not now willing to disturb it; yet I entertain serious doubts of the soundness of the reasons

upon which it had been placed, and if the question were a new one, should be much inclined to go against it as inconsistent with our statute against usury. It is a mode by which that statute is evaded, and may in cases of loans for any considerable period of time, be greatly abused. The practice seems to have origin- 'ted in confounding interest with discount, the difference between them being the interest on the sum reserved. I feel however, compelled to yield to the force of authority.

The second question upon this branch of the case is, whether the mode of computation can be sustained by law. It is clearly established by the evidence of Morford the cashier, that in making his calculation of interest, he took thirty days for the month and twelve months or three hundred and sixty days for the year, and it is equally clear, that if the note was discounted on the 11th of January and fell due on the 27th of April, notwithstanding the short month of February intervened, that rule of computation would give thirteen cents and a fraction more than the interest allowed by law. This is in fact taking more than six per cent. interest for the forbearance of one hundred dollars for a year, or at that rate, and by the terms of the act, is usurious and will vitiate and avoid the contract, if this court cannot look beyond the letter of the law. But I apprehend that it is not a sound rule of construction to adhere to the strict letter of a statute in opposition to the intent and spirit of the law which is as clear to the mind of every intelligent and rational man as the letter is to his external senses. The law never intended to punish with heavy penalties him who never designedly intended to violate it; and although it is true as a general principle that an act in violation of a statute is indicative of a motive to violate, and unexplained, is legal and conclusive evidence of such motive, yet the party charged with such act may show that it was done in good faith and with an honest and legal purpose, which in reason and justice should be his protection against penalties. It will not be denied, for cases abundantly prove it, that when in the computation of interest, a mistake is made in figures, whereby more than legal interest is reserved, that such mistake will not avoid the contract on the ground of usury. And I can perceive no difference between the cases of a miscalculation and the innocent adoption of an incorrect or erroneous principle of com-

putation where the fact is as clearly established in the one case as in the other. In this case the witness who had no interest in the matter, testifies that the calculation of the interest was his own act, done without any special instructions from his principal, that he made his calculation according to a common, general and universal rule adopted by all banks, and that he intended to take only at the rate of six per cent. interest and no more. Here we have a complete and direct denial of any intent to violate the statute confirmed by the natural and rational construction of the act itself, by which, thirteen cents was reserved more than the statute allowed on the sum of four hundred and ninety-six dollars and sixty-seven cents. With the utmost respect for the decisions and opinions of the learned judges in our sister state of New York, who have held a contrary doctrine in the cases reported in the second volume of Cowen, I cannot bring my own mind to the conclusion at which they have arrived by the strict and severe construction of the statute against usury, nor can I believe that either the law or the justice of the case or the interest of society requires it. And if I do not misapprehend the more recent decisions in that court, upon this point, as reported in 3d *Wendell*, 371, the doctrine I contend for is there sanctioned. I would not be understood as approving the mode of computing interest adopted in this case ; but this being the first time the question has been raised in this court ; if the views which I have expressed should be sanctioned by the court, it may be such an intimation as may hereafter deprive a party from setting up ignorance or mistake as an excuse for the act.

The only remaining question to be examined in this case is, whether the charge of one per cent. for a draft on Newark, was usurious. If this charge it to be esteemed a part of the contract of loan, and was made by way of contrivance to evade the statute of usury, the contract was clearly usurious and void, but if it was made after the note was discounted, or only acquiesced in by the defendants after such discount, and constituted no part of the contract of loan, or if it was a reasonable charge for the expense and risk of remittance, it will not vitiate the contract : and although I have my misgivings on this point, I consider it a question of fact of which the jury were the proper judges, and

having rendered their judgment on the evidence, do not deem it my duty to interfere with their judgment.

Upon the whole case therefore, I am of opinion that the rule to show cause, should be discharged.

*Rule made absolute.*